# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:15-cr-0362-01-DGK |
| ) | |
| DNRB, INC., ) | |
| d/b/a Fastrack Erectors, ) | |
| ) | |
| Defendant. ) | |

## ORDER DENYING DENTONS' MOTION TO QUASH AND DNRB'S OBJECTIONS

This criminal case arises from the death of an ironworker, Eric Roach, on a construction site. He fell while working on a steel beam 36 feet off the ground without fall protection and died the next day from his injuries. After a two-day bench trial, the Court found Defendant DNRB, Inc., d/b/a Fastrack Erectors ("DNRB"), guilty of violating an OSHA regulation and causing death, 29 U.S.C. § 666(e).[1] *See* Mem. Regarding Verdict (Doc. 68); Mem. Order and Verdict Making Findings of Fact and Conclusions of Law (Doc. 69). The Court has not yet sentenced DNRB.

Prior to the initially scheduled sentencing hearing, DNRB provided information to the probation office suggesting it was incapable of paying a fine. Believing a successor corporation existed which could pay a fine, the Government issued subpoenas to the suspected successor entity, St. Louis Steel Construction, LLC ("St. Louis Steel"),[2] and to defense counsel Dentons US LLP ("Dentons"). The Government issued the subpoena to Dentons in order to determine precisely how DNRB was paying its legal bills.

---

[1] Violating an OSHA regulation and causing death is a class B misdemeanor punishable by a maximum fine of $500,000.

[2] St. Louis Steel is owned by Debbie Bragg, the wife of DNRB's founder, Clayton Bragg.

Now before the Court is Dentons' Motion to Quash Subpoena (Doc. 79) and DNRB's Objections to Government Subpoena (Doc. 83). The Court denies the motion and overrules the objections because they were not promptly filed and because the subpoena, as modified, complies with the law.

## Background

On April 18, 2017, the Court issued an order setting the sentencing hearing for May 31, 2017, at 2:00 p.m.

On May 9, the probation officer released his final presentence investigation report ("PSR"). The PSR concluded that based upon financial statements provided by DNRB, which showed DNRB had a majority of zero balances in its accounts, DNRB would not be able to pay a fine of any amount either now or in the future.

On May 11, the Court ordered the parties to brief what they believed an appropriate sentence would be, particularly given that DNRB was voluntarily dissolved in January 2016. Among other questions, the Court asked if a fine was an appropriate sentence, and if so, how it could be paid since DNRB had voluntarily dissolved.

On May 16, the Government served Dentons with a subpoena to obtain billing records.[3] The subpoena sought: "Any and all records regarding billing and payment records for the representation of DNRB, Inc., for the time period from August 1, 2015, through the date of subpoena." Subpoena at 2 (Doc. 79-1). It directed Dentons to produce the information at the sentencing hearing.

Less than twenty-four hours before the hearing, on May 30 at 2:27 p.m., Dentons filed the pending motion to quash. At 5:26 p.m., DNRB filed its objections.

---

[3] The Government informally requested the information in an email sent to Dentons on May 1, stating it wanted to offer the billing records into evidence at the sentencing hearing. Ex. 2 to Denton's Mem. in Supp. (Doc. 79-2).

2

The Government filed its response the next morning. In it, the Government clarified that it is "only seeking information concerning the amounts billed to the client on a monthly or other periodic basis, the payments made to the law firm, the method of payments to the law firm, and the source of the payments to the law firm." Resp. at 1 (Doc. 82).

Later that day, at the scheduled time of the sentencing, the Court held a brief hearing in the matter. Instead of going forward with the sentencing, as DNRB requested, the Court heard argument from the parties.

**Standard**

Under Federal Rule of Criminal Procedure 17(c)(1), a party may use a subpoena to "order the witness to produce any books, papers, documents, data, or other objects the subpoena designates" before trial or before they are offered into evidence. The purpose of the rule is to expedite a trial or hearing by providing a means before the trial or hearing to inspect subpoenaed materials. *United States v. Nixon*, 418 U.S. 683, 698-99 (1974). Rule 17 is not a means for generalized discovery or to obtain general discovery from third parties. *Id.*; *United States v. Stevenson*, 727 F.3d 826, 831 (8th Cir. 2013).

The party seeking production under Rule 17(c) must show the subpoenaed materials are: (1) relevant; (2) admissible; and (3) requested with adequate specificity (collectively "the *Nixon* factors"). *Stevenson*, 727 F.3d at 831. Other considerations include whether failure to obtain the documents may tend to unreasonably delay the trial, and whether the materials are requested in good faith. *United States v. Shepard*, 4:09-cr-423 RWS DDN, 2010 WL 750110, at *2 (E.D. Mo. Feb. 26, 2010).

Rule 17 also provides that upon a "motion made *promptly*, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2)

(emphasis added). The party seeking to quash or modify the subpoena bears the burden of showing it is unreasonable or oppressive. *Matter of Grand Jury Proceedings* (Krynicki), 2 F.3d 1153, at *2 (7th Cir. 1993) (citing *United States v. R. Enterprises, Inc.*, 111 S.Ct. 722, 728 (1991)).

## Discussion

As a threshold matter, both Dentons' motion to quash and DNRB's objections were not made promptly as required by Rule 17(c)(2). There is little caselaw discussing in depth what "promptly" means; it appears to turn on the particular facts of the case. Generally speaking, the purpose of this requirement is to keep the litigation moving. *See Nixon*, 418 U.S. at 698-99 (noting the Rule's "chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials."); *Shepard*, 2010 WL 750110, at *2 (holding in ruling on a motion to quash, the court must consider whether the party subpoenaing the information can "adequately prepare for trial without advance production of the documents," or if failure to obtain the documents will "unreasonably delay the trial"). The Rule aims to prevent the moving party from waiting until the last possible moment to object, forcing the Court to either delay the case or proceed and deprive the non-moving party of access to evidence.

That is what happened here. Although being served on May 16 compressed Dentons' and DNRB's time to respond, they have known since May 1 that the Government was seeking these records. They could have objected quickly, within a few days of being served. The issues presented here are not novel or complex: Dentons' combined motion and suggestions in support is only four pages long, and DNRB's is six. An associate could have researched and written each filing in less than a day. Even including time to consult with a client or a corporate

representative who might not be immediately available, or to write multiple drafts of a very short motion, these filings could have been made within a week.

The Court's finding concerning promptness is also shaped by the fact that the failure to file until the day before the hearing was not an oversight. Although Dentons and DNRB fail to mention the "promptly" requirement when they quote Rule 17(c)(2), it is in the text of the rule, and both Dentons and DNRB are represented by sophisticated counsel with extensive experience litigating criminal cases in federal court.[4] Consequently, the Court finds Dentons' and DNRB's failure to file the motion and objections until the last minute was not due to a lack of time to respond or inadvertent, it was a deliberate decision. Why they made this choice is unclear; it appears they wanted to limit the Government's time to respond to prevent release of the information. In any event, the motion to quash and objections were not filed "promptly."

Whether this ends the analysis is unclear. At least one court has held that a Rule 17 motion to quash that is not filed promptly should be denied as untimely, *see United States v. Debolt*, No. 5:09cr24, 2010 WL 4281699, at *4 (N.D.W. Va. Oct. 19, 2010), and the Court could not find any contrary authority. However, out of an abundance of caution and to aid in any appellate review, the Court will consider the parties' arguments regarding the merits of the subpoena.

Dentons argues the subpoena "seeks documents and/or information protected from disclosure under the attorney-client privilege, the attorney work-product doctrine, and potentially other privileges and protections recognized under applicable substantive and procedural law,

---

[4] For example, DNRB's defense team includes a former federal prosecutor who served as a principal deputy assistant attorney general in the Department of Justice.


and/or applicable ethical rules." Mem. in Supp. at 3 (Doc. 79). Dentons does not, however, identify what specific protected information would be disclosed, or how it would be disclosed.[5]

DNRB argues the subpoena seeks irrelevant and inadmissible materials, is insufficiently specific, is a "fishing expedition" for general discovery materials, and seeks privileged materials.

The Court holds the *Nixon* factors are satisfied because the information sought is relevant, admissible, and requested with adequate specificity. First, the material is relevant because it tends to make several facts of consequence to sentencing more probable or less probable, namely: (1) whether DNRB possesses the ability to pay a fine; (2) whether there is a corporate successor to DNRB; and (3) whether that successor possesses the ability to pay a fine.

The Court is unmoved by DNRB's argument that the information is irrelevant because the Government did not formally object to the PSR's finding that it is unable to pay a fine, or offer contradictory evidence that DNRB can pay. The Court typically allows a party to object to findings in the PSR at sentencing even if it failed to make a formal, written objection prior to the hearing. As for the Government's failure to offer any contradictory evidence, the Court finds the subpoena is the only way the Government can obtain this evidence.

Further, the subpoena is not a fishing expedition. An enormous amount of money has been spent, and continues to be spent, on DNRB's defense, yet DRNB claims it cannot pay a fine. Indeed, at the hearing, counsel for DNRB suggested it could not even pay its legal bills. Yet three partners formally appeared at the May 31st hearing, and at least one associate attended

---

[5] Dentons' motion cites caselaw holding that attorneys' billing and payment records which "reveal the motives of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the [work-product] privilege." *Clarke v. Am. Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992). But it does not assert that its billing and payment records would actually reveal DNRB's motives, litigation strategy, or other protected information.

the proceedings from behind the bar.[6] With so many attorneys continuing to appear, the Court finds it difficult to believe that they are not being paid somehow. Based on the evidence the Court heard at trial—including the fact that after the accident, the two DNRB foremen who testified they never saw Mr. Roach working without fall protection began working for St. Louis Steel—it seems likely that St. Louis Steel is the corporate successor of DNRB and has been paying its legal bills. If so, this would tend to show it is DNRB's corporate successor, and there is money available to pay a fine. Hence, the information sought by the subpoena is relevant.

Second, the information is admissible. As originally worded, the subpoena arguably requested some material likely protected by the work-product doctrine and some material possibly protected by the attorney-client privilege. In light of the Government's clarification that it is "only seeking information concerning the amounts billed to the client on a monthly or other periodic basis, the payments made to the law firm, the method of payments to the law firm, and the source of the payments to the law firm," which the Court construes as a modification, the Court holds the subpoena does not seek any protected or privileged information. It is well-established that no privilege attaches to information about what attorneys' fees were paid, in what amount, in what form, or by whom. *See*, *e.g.*, *Ralls v. United States*, 52 F.3d 223, 225 (9th Cir. 1995) ("Generally, the attorney-client privilege does not safeguard against the disclosure of either the identity of the fee-payer or the fee arrangement."); *In re Walsh*, 623 F.2d 489, 494 (7th Cir. 1980) (upholding subpoena for an attorney's "ledgers, bills, time records, and retainer agreements" because as a general rule, matters involving the receipt of fees from a client do not involve confidential communications and so are not protected by the attorney-client privilege). As modified, the subpoena does not seek information such as the raw hourly time sheets from

---

[6] A separate law firm, Sandberg Phoenix & Von Gontard, P.C. also appeared at the May 31, 2017, hearing. This firm is representing DNRB in the OSHA administrative matters.

7

which the Government could learn how much time DNRB's attorneys spent researching a particular issue or exploring a potential defense, records which might indirectly divulge attorney thought processes or other information protected by the work-product doctrine. Thus, the subpoena seeks admissible evidence.

Third, the subpoena requests the information with adequate specificity. As modified, the subpoena seeks Dentons' billing and payment records from the last twenty-two months concerning: (1) the aggregate amounts Dentons billed on a periodic basis for representing DNRB in this case; (2) the amount actually paid to Dentons for these services; (3) the method of these payments; and (4) the source of these payments. This is sufficiently specific that compliance will not be unreasonable or burdensome.

Turning to the remaining considerations, the Court finds that failing to obtain these documents will tend to unreasonably delay the sentencing hearing.[7] The Court also sees no other way the Government can procure the information sought. Finally, the Court finds the Government has subpoenaed the material in good faith, not to harass or burden defense counsel.

Accordingly, for the reasons discussed above, Dentons' Motion to Quash (Doc. 79) is DENIED, and DNRB's Objections (Doc. 83) are OVERRULED.

Dentons shall comply with the subpoena, as modified, by July 18, 2017.

**IT IS SO ORDERED.**

Date: June 27, 2017         /s/ Greg Kays
                                                   GREG KAYS, CHIEF JUDGE
                                                   UNITED STATES DISTRICT COURT

---

[7] Although the Government could abandon its inquiry into DNRB's ability to pay a fine, this would not be in the interest of justice, because the Court's decision making will benefit from having informed, adverse parties litigate DNRB's ability to pay a fine.