IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:15-cr-0362-01-DGK |
| | ) |
| DNRB, INC., | ) |
| d/b/a Fastrack Erectors, | ) |
| | ) |
| Defendant. | ) |

## ORDER DENYING SANDBERG PHOENIX & VON GONTARD P.C.'S MOTION TO QUASH SUBPOENA

This criminal case arises from the death of an ironworker, Eric Roach, on a construction site. He fell while working on a steel beam 36 feet off the ground without fall protection and died the next day from his injuries. After a two-day bench trial, the Court found Defendant DNRB, Inc., d/b/a Fastrack Erectors ("DNRB"), guilty of violating an OSHA regulation and causing death, 29 U.S.C. § 666(e).[1] *See* Mem. Regarding Verdict (Doc. 68); Mem. Order and Verdict Making Findings of Fact and Conclusions of Law (Doc. 69). The Court has not yet sentenced DNRB.

Prior to the initially scheduled sentencing hearing, DNRB provided information to the probation office suggesting it was incapable of paying a fine. Believing a successor corporation existed which could pay a fine, the Government issued subpoenas to several entities, including the law firm representing DNRB in the related civil matter before the U.S. Occupational Safety and Health Review Commission, Sandberg Phoenix & von Gontard P.C. ("Sandberg Phoenix").

---

[1] Violating an OSHA regulation and causing death is a class B misdemeanor punishable by a maximum fine of $500,000.

The Government issued the subpoena to Sandberg Phoenix in order to determine precisely how DNRB was paying its legal bills despite being administratively dissolved.

Now before the Court is Sandberg Phoenix's Motion to Quash Subpoena (Doc. 81). Finding that the subpoena complies with Rule 17, the motion is DENIED.

## Background

On April 18, 2017, the Court issued an order setting the sentencing hearing for May 31, 2017, at 2:00 p.m.

On May 9, the probation officer released his final presentence investigation report ("PSR"). The PSR concluded that based upon financial statements provided by DNRB, which showed DNRB had a majority of zero balances in its accounts, DNRB would not be able to pay a fine of any amount either now or in the future.

On May 11, the Court ordered the parties to brief what they believed an appropriate sentence would be, particularly given that DNRB was voluntarily dissolved in January 2016. Among other questions, the Court asked if a fine was an appropriate sentence, and if so, how it could be paid since DNRB had voluntarily dissolved.

On May 18, the Government served Sandberg Phoenix with a subpoena to obtain billing records. The subpoena sought: "Any and all records regarding billing and payment records for the representation of DNRB, Inc., for the time period from August 1, 2015, through the date of subpoena." Subpoena at 2 (Doc. 81-1). It directed Sandberg Phoenix to produce the information at the sentencing hearing.

Less than twenty-four hours before the hearing, on May 30 at 4:40 p.m., Sandberg Phoenix filed the pending motion to quash.

The Government filed its response the next morning. It clarified that the subpoena is "only seeking information concerning the amounts billed to the client on a monthly or other periodic basis, the payments made to the law firm, the method of payments to the law firm, and the source of the payments to the law firm." Resp. at 1 (Doc. 82).

Later that day, at the scheduled time of the sentencing, the Court held a hearing in the matter.

**Standard**

Under Federal Rule of Criminal Procedure 17(c)(1), a party may use a subpoena to "order the witness to produce any books, papers, documents, data, or other objects the subpoena designates" before trial or before they are offered into evidence. The purpose of the rule is to expedite a trial or hearing by providing a means before the trial or hearing to inspect subpoenaed materials. *United States v. Nixon*, 418 U.S. 683, 698-99 (1974). Rule 17 is not a means for generalized discovery or to obtain general discovery from third parties. *Id.*; *United States v. Stevenson*, 727 F.3d 826, 831 (8th Cir. 2013).

The party seeking production under Rule 17(c) must show the subpoenaed materials are: (1) relevant; (2) admissible; and (3) requested with adequate specificity (collectively "the *Nixon* factors"). *Stevenson*, 727 F.3d at 831. Other considerations include whether failure to obtain the documents may tend to unreasonably delay the trial, and whether the materials are requested in good faith. *United States v. Shepard*, 4:09-cr-423 RWS DDN, 2010 WL 750110, at *2 (E.D. Mo. Feb. 26, 2010).

Rule 17 also provides that upon a "motion made *promptly*, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2) (emphasis added). The party seeking to quash or modify the subpoena bears the burden of

showing it is unreasonable or oppressive. *Matter of Grand Jury Proceedings* (Krynicki), 2 F.3d 1153, at *2 (7th Cir. 1993) (citing *United States v. R. Enters., Inc.*, 111 S.Ct. 722, 728 (1991)).

**Discussion**

As a threshold matter, it is a close call whether the motion to quash was made promptly as required by Rule 17(c)(2). There is circumstantial evidence here suggesting Sandberg Phoenix deliberately waited to file the motion until just before the close of business the day before the hearing, thus the motion was not filed promptly. However, because the Government did not serve or otherwise notify the firm until May 18 that it was seeking this information, and to ensure that Sandberg Phoenix's motion is decided on the merits, the Court holds it did not violate the "promptly" requirement.

With respect to the *Nixon* factors, the Court holds they are satisfied because the information sought is relevant, admissible, and requested with adequate specificity. First, the material is relevant because it tends to make several facts of consequence to sentencing more probable or less probable, namely: (1) whether DNRB possesses the ability to pay a fine; (2) whether there is a corporate successor to DNRB; and (3) whether that successor possesses the ability to pay a fine.

The subpoena is not a fishing expedition. An enormous amount of money has been spent, and continues to be spent, on DNRB's defense, yet DRNB claims it cannot pay a fine. Indeed, at the hearing, counsel for DNRB suggested it could not even pay its legal bills. Yet five attorneys from two different law firms attended the May 31 hearing to protect DNRB's interests. With so many attorneys continuing to appear, the Court finds it difficult to believe that they are not being paid somehow. Based on the evidence the Court heard at trial—including the fact that after the accident, the two DNRB foremen who testified they never saw Mr. Roach working

without fall protection began working for St. Louis Steel, a steel erection company owned by the wife of DNRB's owner—it seems likely that St. Louis Steel is the corporate successor of DNRB and has been paying its legal bills. If so, this would tend to show it is DNRB's corporate successor, and therefore there is money available to pay a fine. Hence, the information sought by the subpoena is relevant.

Second, the information is admissible. As originally worded, the subpoena arguably requested some material likely protected by the work-product doctrine and some material possibly protected by the attorney-client privilege. In light of the Government's clarification that it is "only seeking information concerning the amounts billed to the client on a monthly or other periodic basis, the payments made to the law firm, the method of payments to the law firm, and the source of the payments to the law firm," which the Court construes as a modification, the Court holds the subpoena does not seek any protected or privileged information. It is well-established that no privilege attaches to information about what attorneys' fees were paid, in what amount, in what form, or by whom. *See*, *e.g.*, *Ralls v. United States*, 52 F.3d 223, 225 (9th Cir. 1995) ("Generally, the attorney-client privilege does not safeguard against the disclosure of either the identity of the fee-payer or the fee arrangement."); *In re Walsh*, 623 F.2d 489, 494 (7th Cir. 1980) (upholding subpoena for an attorney's "ledgers, bills, time records, and retainer agreements" because as a general rule, matters involving the receipt of fees from a client do not involve confidential communications and so are not protected by the attorney-client privilege). As modified, the subpoena does not seek information such as the raw hourly time sheets from which the Government could learn how much time DNRB's attorneys spent researching a particular issue or exploring a potential defense, records which might indirectly divulge attorney

5

thought processes or other information protected by the work-product doctrine. Thus, the information sought is admissible.

Third, the subpoena requests the information with adequate specificity. As modified, the subpoena seeks Sandberg Phoenix's billing and payment records from the last twenty-two months concerning: (1) the aggregate amounts Sandberg Phoenix billed on a periodic basis for representing DNRB; (2) the amount actually paid to Sandberg Phoenix for these services; (3) the method of these payments; and (4) the source of these payments. This is sufficiently specific that compliance with the subpoena will not be unreasonable or burdensome.

Turning to the remaining considerations, the Court finds that failing to obtain these documents will tend to unreasonably delay the sentencing hearing.[2] The Court also sees no other way the Government can procure the information sought. Finally, the Court finds the Government has subpoenaed the material in good faith and not to harass or burden Sandberg Phoenix.

Accordingly, for the reasons discussed above, the Motion to Quash (Doc. 81) is DENIED.

Sandberg Phoenix shall comply with the subpoena, as modified, by July 18, 2017.

**IT IS SO ORDERED.**

Date:  June 27, 2017                                    /s/ Greg Kays
                                                        GREG KAYS, CHIEF JUDGE
                                                        UNITED STATES DISTRICT COURT

---

[2] Although the Government could abandon its inquiry into DNRB's ability to pay a fine, this would not be in the interest of justice, because the Court's decision making will benefit from having informed, adverse parties litigate DNRB's ability to pay a fine.